944 F.2d 253
 Bankr. L. Rep. P 74,301, 37 Cont.Cas.Fed. (CCH) P 76,201
UNITED STATES of America for the Use of AMERICAN BANK, et
al., Plaintiffs-Appellants Cross-Appellees,
v.
C.I.T. CONSTRUCTION INCORPORATED OF TEXAS,
Defendant-Appellee Cross-Appellant,
and
Fireman's Insurance Company of Newark, New Jersey, Defendant-Appellee.
CARLOS
 No. 89-1654.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 15, 1991.
Rehearing Denied Nov. 18, 1991.
 
 Patrick E. Gaas, Benjamin C. Wilson, Warren J. Fields, Winstead, McGuire, Sechrest and Minich, Houston, Tex., for American Bank.
 J. Mark Brewer, Brewer & Pritchard, Houston, Tex., for plaintiffs-appellants, cross-appellees.
 Robert Alan York, Richard M. Kaplan, Fred H. Cook, Weycer, Kaplan, Pulaski & Zuber, Houston, Tex., for C.I.T., etc.
 Roger L. Mandel, Marc R. Stanley, Dallas, Tex., for Fireman's Ins. Co., of Newark, N.J.
 Appeal from the United States District Court for the Western District of Texas.
 Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 We decide several interrelated issues in this Miller Act case, but our inquiry primarily focuses on one issue: Does a Miller Act claimant's failure to file its claim within the one-year limitation period of 40 U.S.C. § 270b(b) mean that a district court must dismiss both the Miller Act claim and pendent state law claims for lack of subject matter jurisdiction?
 
 I. BACKGROUND
 
 2
 In January 1987,[1] the Army and Air Force Exchange Service contracted with C.I.T. Construction Incorporated of Texas ("CIT") for expansion of a shopping center located at the Bergstrom Air Force base in Austin, Texas. Fireman's Insurance Company of Newark, New Jersey ("Fireman's") provided CIT's payment bond, as required under the Miller Act, 40 U.S.C. § 270a(a)(2). CIT subcontracted the plumbing and mechanical portion of the project to P.B. Elders Corporation ("Elders"), which in turn subcontracted with Carrier Corporation ("Carrier") to supply air conditioning and heating equipment to Elders for use in the project. Elders obtained a loan from American Bank ("American") secured by Elders' accounts receivable, inventory, machinery and equipment.
 
 
 3
 American claims that CIT fell behind in its progress payments to Elders as work progressed on the project, and that Elders could no longer pay Carrier. On July 21, Carrier contacted Paul Elders ("Mr. Elders"), president of Elders, to ask whether it should continue to deliver equipment to Elders at the construction site. Mr. Elders told Carrier that he would not take responsibility for any equipment delivered by Carrier. Mr. Elders also cancelled his company's purchase order with Carrier prior to Carrier's deliveries of equipment to the jobsite on and after July 29. Although Carrier delivered equipment to the project on July 29 and several times thereafter, CIT alleges that those deliveries took place pursuant to an arrangement whereby CIT agreed to pay Carrier directly for the equipment.[2] In September, Elders filed for reorganization under Chapter 11 of the Bankruptcy Code.
 
 
 4
 On July 19, 1988, American brought a Miller Act claim against Fireman's and contract and quantum meruit claims against CIT (collectively, "Defendants"). American had foreclosed its security interest on Elders's accounts receivable and brought this suit as successor in interest to the claims of Elders after the bankruptcy court granted American's motion for relief from the automatic stay.
 
 
 5
 After a bench trial, the district court found that it lacked jurisdiction over American's Miller Act claim because American failed to file its suit within the one-year period specified in 40 U.S.C. § 270b(b). Because the district court concluded that American did not satisfy "the jurisdictional prerequisite to bringing suit under the Miller Act," it did not reach the merits of American's contract or quantum meruit claims. Rather, the district court dismissed with prejudice all of American's claims against the Defendants on April 8 and again on April 19, 1989.[3] American filed a motion for the district court to reconsider its dismissal orders or, alternatively, to amend or alter judgment. The district court denied American's motion on June 21, 1989.
 
 
 6
 American challenges the district court's finding that American failed to file its Miller Act claim within the statutory limitation period and the district court's conclusion that it must dismiss American's Miller Act, contract, and quantum meruit claims because it lacked subject matter jurisdiction over the claims. CIT cross-appeals the district court's denial of its request for attorney's fees.[4]
 
 II. MILLER ACT CLAIM
 
 7
 A claimant cannot commence suit under the Miller Act "after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him" in prosecution of the work provided for in the contract between the government and the prime contractor. 40 U.S.C.A. § 270b(b) (1986); see 40 U.S.C.A. § 270b(a) (1986) (permitting supplier of labor or material to government construction project to sue Miller Act surety on the payment bond required by 40 U.S.C.A. § 270a(a)(2) (1986)). American claims that Carrier supplied equipment on behalf of Elders after July 18 and, thus, that the one-year limitation period had not run when American filed suit on July 19 of the following year. The district court found that American "did not demonstrate that any work was performed or materials furnished on behalf of Elders under the contract with CIT on a date after July 15, 1987," held that American did not meet the "jurisdictional prerequisite to bringing suit under the Miller Act," and thus dismissed the Miller Act claim for lack of subject matter jurisdiction.
 
 A. Subject Matter Jurisdiction
 
 8
 We hold that the district court erroneously concluded that it could not exercise subject matter jurisdiction over American's Miller Act claim because it did not meet the one-year "jurisdictional prerequisite" of the Miller Act. We find the expression of the applicable rule in United States ex rel. Texas Bitulithic Co. v. Fidelity and Deposit Co., 813 F.2d 697, 699 (5th Cir.1987), wherein this Court interpreted the one-year requirement of 40 U.S.C. § 270b(b). Although we recognized our prior cases that "treated the one-year requirement as a substantive limitation of the rights conferred by the Act," we clarified that our use of the word " 'jurisdictional' " referred "to the conditional nature of the right to sue" under the Miller Act, not to the "jurisdiction of the court itself." Id. (citations omitted). We held that the district court should have exercised subject matter jurisdiction over the Miller Act claim because Congress had supplied it with "express statutory jurisdiction" over any " 'action on a bond executed under [a] law of the United States,' " which included a suit on a Miller Act payment bond. Id. (citing 28 U.S.C. § 1352).
 
 
 9
 The one-year period in the Miller Act is limitational, not jurisdictional. We hold that 28 U.S.C. § 1352 provided the district court with subject matter jurisdiction over American's suit on the payment bond executed under the Miller Act. Accordingly, we reverse the judgment of the district court to the extent it refused to exercise subject matter jurisdiction over American's Miller Act claim.
 
 B. One Year Limitation Period
 
 10
 While it is true that the district court had subject matter jurisdiction over American's Miller Act claim, the district court predicated its contrary jurisdictional conclusion on its finding that American failed to bring suit within the one-year limitation period that restricts American's Miller Act rights. We agree with the district court's finding that American commenced this suit after one year beyond the last day Elder's performed labor or supplied material. The record supports the district court's conclusion that the one-year limitation period of 40 U.S.C. § 270b(b) barred American's pursuit of the suit.
 
 
 11
 American challenges the reasoning that supported the district court's dismissal of American's claims and its later denial of American's motion for reconsideration. First, American claims that the district court's finding that Carrier did not make its July 29 delivery pursuant to its contract with Elders was clearly erroneous. Second, American argues that the doctrine of judicial estoppel bars CIT from asserting that Carrier did not deliver any equipment after July 18 under its contract with Elders because in an affidavit filed by CIT in a related proceeding, a CIT employee stated that Carrier delivered equipment to Elders at the project on July 29. Finally, American contends that the district court incorrectly concluded that section 108(a) of the Bankruptcy Code did not apply to extend the one-year Miller Act limitation period.
 
 1. Sufficiency of the Evidence
 
 12
 We find sufficient evidence in the record to support the district court's finding that Carrier did not perform work or furnish materials or equipment on behalf of Elders under Elders's subcontract with CIT after July 15.[5] CIT's job superintendent, Bill Webb ("Webb"), testified that July 15th was Elders's last day on the job. The log reports indicated no activity or materials supplied by Elders after July 15. Mr. Elders stated under oath in a deposition that on July 21 he "told Carrier we [Elders] were not on the project, we could not accept equipment, we would accept no liability for the equipment." Mr. Elders further deposed that he cancelled Elders's purchase order with Carrier prior to Carrier's deliveries to the jobsite on and after July 29. American has failed to demonstrate that the district court's finding was clearly erroneous.
 
 2. Judicial Estoppel
 
 13
 The doctrine of judicial estoppel fails to rescue American from its limitational predicament. The affidavit that forms the basis of American's judicial estoppel claim was executed by CIT employee Webb and filed by CIT in a related proceeding ("Affidavit").[6] In the Affidavit, Webb stated that "goods were supplied by Carrier Corporation on behalf of the P.B. Elders Corporation to CIT on an invoice dated July 29, 1987."
 
 
 14
 American urges us to apply the doctrine of judicial estoppel to prevent CIT from "contradicting its own sworn statement" filed in the related proceeding by asserting that Carrier did not supply equipment on behalf of Elders after July 18 in this lawsuit. The district court concluded that the Affidavit did "not estop Defendants from maintaining an inconsistent position on the matters contained in that affidavit" in its denial of American's motion to reconsider the order of dismissal or, alternatively, to amend or alter judgment. CIT argues that American cannot raise its judicial estoppel claim on appeal because American failed to plead the theory of judicial estoppel. We agree. Federal Rule of Civil Procedure 8(c) requires that "a party shall set forth affirmatively ... estoppel ... and any other matter constituting an avoidance or affirmative defense," Fed.R.Civ.P. 8(c), and failure to timely raise estoppel generally constitutes a waiver. Cf. Davis v. Huskipower Outdoor Equipment Corp., 936 F.2d 193, 198 (5th Cir.1991) (defendant waived statute of limitation defense by failing to plead it). We hold that American cannot raise the doctrine of judicial estoppel on appeal because its failure to plead estoppel means that it waived the issue.
 
 
 15
 Recent decisions do indicate that an appellate court can raise the doctrine of judicial estoppel on its own motion if confronted with an especially egregious case wherein a party has successfully asserted a directly contrary position. In re Cassidy, 892 F.2d 637, 641 (7th Cir.) (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1168 n. 5 (4th Cir.1982)), cert. denied, --- U.S. ----, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). Absent a flagrant threat to the judicial process, however, we will not disregard the waiver produced by a failure to plead judicial estoppel in conformity with Federal Rule of Civil Procedure 8(c). American does not present us with the kind of extraordinary case that might persuade us to overlook its waiver of judicial estoppel. Indeed, this is clearly not an egregious case because we find no evidence in the record that demonstrates acceptance of the position taken in the Affidavit by the court in the related proceeding.
 
 
 16
 The doctrine of judicial estoppel "applies in cases where a party attempts to contradict his own sworn statements in the prior litigation."[7] Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir.1988) (citing USLIFE Corp. v. U.S. Life Ins. Co., 560 F.Supp. 1302, 1304-05 (N.D.Tex.1983)). We use judicial estoppel "to protect the integrity of the judicial process." Id. To achieve this purpose, many courts inquire whether the party "successfully maintained" its contrary position in the prior proceeding. USLIFE, 560 F.Supp. at 1305 (citations omitted). If the first court accepted the party's prior position and the second court adopts the later position, then the second court reaches an inconsistent result and " 'at least one court has probably been misled.' " Id. (citing Edwards v. Aetna Life Insurance Co., 690 F.2d 595, 599 (6th Cir.1982) ("Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected.")). The "judicial acceptance" requirement minimizes the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigates the corresponding threat to judicial integrity. Teledyne Industries, Inc. v. National Labor Relations Board, 911 F.2d 1214, 1217-18, 1217 n. 3 (6th Cir.1990) (explaining purpose of judicial estoppel, which is designed to prevent parties from contradicting a prior court determination, not themselves); see Phillips v. Federal Deposit Insurance Corp., 124 B.R. 712, 720 (W.D.Tex.1991).
 
 
 17
 Although we have not explicitly held that judicial acceptance of the prior inconsistent position constitutes a requirement for application of the Fifth Circuit doctrine of judicial estoppel, our reliance on USLIFE in Brandon and our previous cases indicate our approval of the requirement as a method to safeguard the judicial process. See Brandon, 858 F.2d at 268 (refusing to apply doctrine of judicial estoppel because insufficient inconsistency between positions in same lawsuit); USLIFE, 560 F.Supp. at 1305-06, 1305 n. 2 (analyzing Fifth Circuit cases and holding party not estopped from maintaining an inconsistent position because party was unsuccessful in maintaining prior position) (citations omitted). Moreover, we acknowledged the "majority view that judicial estoppel does not apply unless the party has been successful in persuading a court to accept its position" and included that component in our analysis of a claim of judicial estoppel under state law. Moore v. United Services Automobile Association, 808 F.2d 1147, 1153 n. 6 (5th Cir.1987) (applying Florida law in diversity case and holding that the district court properly "failed to credit" the judicial estoppel argument because the jury rejected the prior position).
 
 
 18
 We affirm the district court's refusal to apply the doctrine of judicial estoppel to prevent CIT from presenting evidence that Carrier did not supply equipment on behalf of Elders after July 18. American waived judicial estoppel because it did not raise it in accordance with Federal Rule of Civil Procedure 8(c). Further, American has not convinced us that the positions taken by CIT present the risk of inconsistent court determinations that might justify disregarding American's waiver and allowing it to raise the doctrine of judicial estoppel on appeal.
 
 3. Section 108(a) of the Bankruptcy Code
 
 19
 Finally, American contends that the district court incorrectly concluded that section 108(a) of the Bankruptcy Code did not apply to extend the Miller Act limitation period. American foreclosed its security interest on Elders's accounts receivable and, on July 19, 1988, brought this Miller Act claim as successor in interest to the claims of Elders. American asserts that section 108(a) extends the one-year Miller Act limitational period two years beyond the date of the September 1987 order for relief, thus bringing its July 1988 filing date well within the desired limitation period ending in September 1989. We find that section 108(a) cannot rescue American from the shallow depths of the one-year Miller Act limitation period.[8]
 
 
 20
 Section 108(a) allows a trustee to commence an action in a nonbankruptcy proceeding within the period allowed for such proceeding or within two years after the order for relief, whichever is later. 11 U.S.C.A. § 108(a) (1991).[9] American specifically contends that section 108(a) applies to a creditor's prosecution of a claim because any recovery the creditor obtains indirectly benefits the bankruptcy estate by reducing the total amount of the estate's debt.
 
 
 21
 Neither the language nor the purpose of section 108(a) support the proposition that a creditor independently pursuing a claim can avail itself of the elongated statute of limitation provided by section 108(a). Section 108(a) explicitly applies to actions brought by a trustee, 11 U.S.C. § 108(a), and other sections of the Bankruptcy Code give a debtor-in-possession the right and power of the trustee to commence an action within the extended statute of limitation under section 108(a). Cunningham v. Healthco, Inc., 824 F.2d 1448, 1459 (5th Cir.1987) (11 U.S.C. § 1107(a) "allows the rights and powers bestowed upon a trustee in § 108 to be exercised by a debtor-in-possession."); Flying "S" Land & Cattle Co. v. Beaumont, 71 B.R. 183, 185-86 (D.Nev.1987) (adopting reasoning of caselaw interpreting sections 103 and 1107(a) of the Bankruptcy Code to entitle a debtor-in-possession to privileges of section 108).
 
 
 22
 The purpose of section 108(a) dictates the conclusion that its rights extend only to trustees and debtors-in-possession, and not to creditors. This is so because both trustees and debtors-in-possession have a fiduciary obligation to "all the creditors of the bankrupt." Natco Industries, Inc. v. Federal Insurance Co., 69 B.R. 418, 419 (S.D.N.Y.1987). Any "recoveries realized" by a trustee or debtor-in-possession "become part of the estate for the benefit of the creditors." Id.; see Northern Specialty Sales, Inc. v. INTV Corp., 57 B.R. 557, 558 n. 1 (D.Or.1986) (§ 108(a) "designed to protect creditors, not debtors"). American certainly did not bring this Miller Act suit as a fiduciary of Elders's creditors under the control of the bankruptcy court.[10] Natco, 69 B.R. at 419.
 
 
 23
 In contrast to the estate-preserving motivations of a trustee or debtor-in-possession, American's position, as a creditor, resembles that of a post-confirmation debtor attempting to obtain the two year extension of section 108(a) to further its own interests. Post-confirmation debtors are not entitled to the tolling provisions of section 108(a) because their interests diverge from those of the creditors of the bankruptcy estate. Motor Carrier Audit & Collection Co. v. Lighting Products, Inc., 113 B.R. 424, 426 (N.D.Ill.1989) (debtor cannot take advantage of two year extension); Natco, 69 B.R. at 419 ("courts have held that debtors acting in own interests ... could not invoke section 108"); cf. Healthco, 824 F.2d at 1460 (debtor not "entitled to § 108's tolling period").[11] Like a post-confirmation debtor, American brings this suit solely to advantage itself, not to benefit all of Elders's creditors. We reject American's assertion that any recovery it obtains in this suit would benefit Elders's creditors by reducing the entire amount of the estate's debt. Just as any recovery by a debtor ordinarily "vest[s] solely in the debtor," any recovery by American in this suit would vest solely in American. Natco, 69 B.R. at 419. Therefore, the tolling provision of section 108(a) does not throw a limitational lifesaving device to American. Since section 108(a) does not apply to American's Miller Act claim, the one-year limitation period applies and bars American's Miller Act claim.
 
 III. STATE LAW CLAIMS
 
 24
 In its order dismissing all of American's claims, the district court found "as a matter of law that the jurisdictional prerequisite to bringing suit under the Miller Act in this Court was not met." The court therefore did "not reach the merits of the contract issues[,] finding that the application of the Miller Act limitations provision is dispositive of the cause." In rejecting American's motion for reconsideration, the court stated that "[a] cause based on the theory of Quantum Meruit under Texas common law is not properly before this Court and the Court declines to rule on this matter. The Court's dismissal of this cause related solely to the Miller Act Federal claim." American claims that the district court erred in finding that it lacked the subject matter jurisdiction to entertain American's contract and quantum meruit claims because of American's failure to file its Miller Act claim within the one-year limitation period.
 
 
 25
 Based on our interpretation of United States ex rel. Texas Bitulithic Co. v. Fidelity and Deposit Co., 813 F.2d 697 (5th Cir.1987), we have instructed the district court to exercise subject matter jurisdiction over American's Miller Act claim, although we affirmed the district court's conclusion that the one-year limitation period barred the Miller Act claim. See supra Part II. In Texas Bitulithic this Court similarly held that the district court should have exercised its jurisdiction over the Miller Act claim under 28 U.S.C. § 1352 and instructed the district court, on remand, to consider whether to exercise pendent jurisdiction over the plaintiff's common law claims, regardless of whether it found plaintiff's Miller Act claim to be time-barred. Id. at 699-700; cf. United States ex rel. Leno v. Summit Construction Co., 892 F.2d 788, 791 (9th Cir.1989) (holding that district court had discretion to consider whether contract and quantum meruit claims arose as claims under Miller Act or as independent state claims).
 
 
 26
 We do not presume that the district court considered whether to exercise pendent jurisdiction over the state claims in this case, which it had the option to exercise because 28 U.S.C. § 1352 provided a jurisdictional basis for American's Miller Act claim. We thus remand for the district court to exercise its discretion as to whether or not it will adjudicate American's contract and quantum meruit claims.
 
 IV. CONCLUSION
 
 27
 For the reasons stated above, we REVERSE in part, AFFIRM in part, and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 Unless otherwise noted, all dates hereinafter are in 1987
 
 
 [2]
 Carrier subsequently sued CIT, Fireman's and Elders's surety to recover payment for equipment provided for the project
 
 
 [3]
 The district court reissued the April 8 dismissal on April 19 because the first order failed to state that American's claim against Fireman's was also dismissed
 
 
 [4]
 CIT argues that the district court erred because attorney's fees under the Miller Act are governed by state law, Texas law permits the recovery of attorney's fees in cases based on a written contract, and the subcontract allows for the recovery of attorney's fees. We base our analysis on the contrary teaching of the Supreme Court in F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). In that case, the Court held that attorney's fees will not be awarded in a Miller Act case absent an enforceable contract provision or evidence of bad faith. Id. 94 S.Ct. at 2163-65. "The clear holding of F.D. Rich is that attorney's fees are not generally available in a Miller Act suit even when state law provides for such an award." United States ex rel. Howell Crane Serv. v. U.S. Fidelity & Guaranty Co., 861 F.2d 110, 112 (5th Cir.1988) (emphasis added)
 We acknowledge our prior Miller Act cases upholding an award of attorney's fees when the contract so provided. For example, we affirmed an award of attorney's fees to a subcontractor based on a contract provision that entitled the party prevailing in " 'any litigation or arbitration ... between the parties hereto, with respect to this agreement or the rights and duties of either in relation thereto ....," to attorney's fees. United States ex rel. Micro-King Co. v. Community Science Technology, Inc., 574 F.2d 1292, 1295 (5th Cir.1978) (holding that jury's finding of breach of contract by contractor in Miller Act case entitled subcontractor to award of attorney's fees under contract providing for same); see United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc., 554 F.2d 164, 165-66 (5th Cir.1977) (per curiam).
 In this case, however, CIT supports its position by relying on language in the agreement between Elders and CIT, which provides in relevant part that "all losses, damages and expenses, including attorneys' fees in the prosecution or defense of any action or suit, incurred by or resulting to contractor on the above account shall be borne by and charged against subcontractor and shall be the damages for breach of this subcontract...." The contract does not expressly impose liability on any party other than Elders, the subcontractor. We also find no evidence in the record of a breach of the subcontract by Elders. For these reasons, we affirm the district court's denial of CIT's request for attorney's fees.
 
 
 [5]
 The parties do not dispute that § 270b(b)'s phrase "by him" includes acts by a subcontractor's subcontractor on behalf of the subcontractor. See, e.g., United States ex rel. H.T. Sweeney & Son, Inc. v. E.J.T. Constr. Co., 415 F.Supp. 1328, 1332-33 (D.Del.1976) (holding that a subcontractor can rely on dates of work done by the subcontractor's own subcontractor in computing Miller Act limitations period)
 
 
 [6]
 The related proceeding was the aforementioned lawsuit brought by Carrier. See supra note 2. American alleges that CIT filed the Affidavit to protect itself from liability to Carrier
 
 
 [7]
 Since we are deciding a federal issue, we apply the federal law of judicial estoppel. Continental Casualty Co. v. McAllen Indep. School Dist., 850 F.2d 1044, 1046 n. 2 (5th Cir.1988) (court must utilize the state formulation of the judicial estoppel principle if "nonfederal issues are at stake") (per curiam)
 
 
 [8]
 We reject the Defendants' contention that the district court erred in considering American's § 108(a) claim because it was raised in American's motion to reconsider the order of dismissal or to amend or alter judgement. A district court possesses the discretion to consider a claim raised for the first time in a posttrial motion. Cf. Cunningham v. Healthco, Inc., 824 F.2d 1448, 1458 (5th Cir.1987) (implying that the district court could have considered a legal defense newly raised in a motion for a new trial)
 
 
 [9]
 Section 108(a) provides as follows:
 (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.
 11 U.S.C.A. § 108(a) (1991).
 
 
 [10]
 American relies on Northern Specialty Sales, 57 B.R. at 558 n. 1, asserting that it "held that Section 108 extends protection to creditors of the debtor-in-possession." In that case, however, the court merely explained in dicta the rationale underlying the application of § 108(a) to prepetition claims when the debtor remains in possession, yet fails to pursue claims because it "knows it will only benefit creditors." Id. The court expansively noted that in that situation, " § 108(a) gives creditors time to investigate and pursue collection of claims for the benefit of the estate." Id. The court seems to refer to the analogous situation wherein the bankruptcy court can appoint a creditor to sue in the trustee's name if the trustee fails to institute suit. Docter, Docter & Salus v. United States, 21 B.R. 290, 293 (E.D.Va.1982). Only when the bankruptcy court allows a creditor to sue for the benefit of the estate can it claim the benefit of § 108(a)
 
 
 [11]
 We analogize American's position to that of a post-confirmation debtor, which ordinarily has full title to its causes of action and, free of the bankruptcy court's control, uses any recovery under those causes of action for its own purposes. Healthco, 824 F.2d at 1460; Natco, 69 B.R. at 419. If the reorganization plan or confirmation order places the debtor's recovery under the control of the bankruptcy court, however, we have characterized that debtor as a "debtor-in-possession" for the purposes of § 108, which means the debtor acts for the benefit of all creditors of the estate and thus benefits from application of § 108(a). Healthco, 824 F.2d at 1460-61