REVISED MAY 15, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-20033

MARILYN FORD-EVANS

Plaintiff-Appellant

v.

UNITED SPACE ALLIANCE LLC

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Marilyn Ford-Evans ("Ford-Evans") worked in one of the Defendant United Space Alliance's ("USA") facilities as a flight crew equipment processor. An equipment processor is involved in the preparation of equipment for space-flight, which encompasses a variety of duties, such as assembling cushions, sewing and folding clothes, fitting clothing on astronauts, and cleaning water bottles. During her tenure at the company, she had a history of problems with her voice. Prior to the incident at issue in this case, she had

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

worked for ten months without the use of her voice; instead, she used pencil and paper to communicate with co-workers.  On July 1, 2003, Ford-Evans had a reoccurrence of her voice problems and began a paid medical/short-term disability leave of absence. She submitted medical certification to USA's leave administrator, CIGNA.  She did not set a definite return date.

Ford-Evans initially saw Dr. Guzman for treatment. After an examination, Guzman released her and referred her to Dr. Stasney, a specialist on voice disorders. Ford-Evans could not schedule her first appointment with Dr. Stasney until August 22, 2003, when she saw Dr. Stasney for a two-hour appointment. Unbeknownst to Ford-Evans at that time, on August 20, 2003, Angela Wallace, a CIGNA case-manager, had sent an email to USA's personnel manager Peter Sellers stating that Ford-Evans had produced no evidence of any disability other than problems with her voice, and could therefore be released to return to work. In her report, Wallace stated that she had several communications with Dr. Guzman, and according to Wallace, Dr. Guzman had released Ford-Evans to work because talking was not a required part of her occupation.

Based on the Wallace letter, Sellers sent a letter to Ford-Evans on August 21, 2003 notifying Ford-Evans that CIGNA was not extending her claim for paid leave beyond August 19, 2003.  Sellers advised Ford-Evans that she had three business days from the receipt of letter to either "(1)  report for return-to-work processing at the USA Health Services Office, (2) provide a request to return to work with reasonable accommodations, or (3) provide satisfactory evidence to the USA Health Services Office that you were still unable to return to work." USA's "Leaves of Absence" policy describes the three-day deadline as follows: "Any employee who fails to return to work within 3 days of the expiration of their leave will be considered to have voluntarily resigned their employment with USA unless he or she presents satisfactory evidence that it was impossible to

2

return or has obtained an extension prior to the end of the 3-day period."

Within three days after the receipt of the letter, on August 25, 2003, Ford-Evans reported to USA's Health Services Office and met with the Health Services Administrator Laniel Vawter. Ford-Evans stated that she was ready to return to work if accommodations were made; she said that she would "have returned to work if [she] had been allowed to have voice rest and no exposure to chemicals." Vawter requested Ford-Evans first obtain a return-to-work certification. Ford-Evans executed a release allowing Vawter to get the necessary certification from Dr. Stasney concerning her ability to return to work.

Ford-Evans contacted Dr. Stasney's office over the next two days but was unable to obtain a certification in time. She therefore obtained a return-to-work release from Dr. Guzman on August 27, 2003. In this release, Dr. Guzman indicated that Ford-Evans was under his care for chronic laryngitis from March 17, 2003 to July 31, 2003 but she had "sufficiently recovered to be able to return to regular duty as of August 19, 2003 (As long as she is able to be on voice rest)." Ford-Evans alleges USA received this release but then requested that Ford-Evans obtain documentation from her treating doctor, Dr. Stasney. Ford-Evans did not submit any further documentation prior to the expiration of the three-day period.

USA then terminated Ford-Evans on August 28, 2003 for failing to abide by the leave policy. At that point, she had been on leave for approximately eight weeks from July 1, 2003 to August 28, 2003. After her termination, Dr. Stasney faxed a letter to Vawter. In this fax, he noted that Dr. Guzman referred Ford-Evans to him for evaluation and treatment and that he had recommended Ford-Evans to have complete voice-rest for two weeks to be followed by limited voice use, close supervision of a speech therapist, and no exposure to chemicals. Dr. Stasney noted in a follow-up letter to USA that "[f]or some individuals, daily

3

exposure to chemicals causes respiratory tract disorders. Therefore the best choice for Ms. Ford-Evans and her employer would be our previously stated recommendations." Dr. Stasney released Ford-Evans to work as long as his recommendations were followed. At the time of her leave, Ford-Evans worked in the cushion preparation lab, which had the presence of certain chemicals, such as Methylethylketone and Kel-F 800.

Ford-Evans then appealed the termination decision to a Management Review Board, presenting all of the documents from Dr. Stasney. The Review Board upheld the decision to terminate Ford-Evans for failing to abide by company policy because she did not return to work and she presented no evidence of a medical condition that prevented her from returning to work.

Ford-Evans filed suit against USA on August 20, 2004, alleging disability discrimination and retaliation claims under the Americans with Disabilities Act ("ADA"), interference and retaliation claims under the Family and Medical Leave Act ("FMLA"), and a pendent Texas law claim of slander. USA sought summary judgment on all claims, which the district court granted. The district court specifically granted summary judgment on Ford-Evans' FMLA interference claim because it was insufficiently pleaded. Subsequently, Ford-Evans filed a Motion to Alter or Amend the Judgment as USA did not move for summary judgment on the FMLA interference claim, but the district court denied the motion.

Ford-Evans then appealed the summary judgment solely as to the FMLA interference claim. We reversed in Ford-Evans v. Smith, 206 F. App'x 332 (5th Cir. Nov. 6, 2006) ("Ford-Evans I") (per curiam) (unpublished). In Ford-Evans I, we concluded that summary judgment against Ford-Evans on her FMLA interference claim was improper because she sufficiently pleaded a FMLA interference claim even though "[i]t is true that the complaint contained a dearth

4

of factual details supporting Ford-Evans's FMLA interference claim." We remanded the FMLA interference claim to the district court for further proceedings. In the district court, USA immediately filed a revised summary judgment motion, which the court denied. The case proceeded to trial. After the plaintiff rested her case, USA filed a Rule 50(a) motion for a directed verdict. The district court granted the motion and ruled for USA because "Ford-Evans was able and willing to return to work, she was no longer suffering from a serious health condition that prevented her from performing the functions of her position, and her entitlement to FMLA leave ended. As such, USA did not interfere with Ford-Evans' rights under FMLA . . ." Ford-Evans now appeals.

## Standard of Review

"We review de novo a district court's ruling on a motion for judgment as a matter of law. . . . Under this standard, we will affirm a directed verdict only if, viewing the evidence presented at trial in the light most favorable to the non-movant, there is no legally sufficient evidentiary basis for a reasonable jury to enter a contrary verdict." Tharling v. City of Port Lavaca, 329 F.3d 422, 426 (5th Cir. 2003) (internal quotation omitted). "[I]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 338 n.8 (5th Cir. 2008).

## Analysis

The defendant-appellee USA contends for the first time on appeal that the plaintiff has not made a prima facie case for interference with FMLA rights because she never established any entitlement to rights under the FMLA. To make a prima facie case for interference with FMLA rights, a plaintiff must first demonstrate that her leave was protected under the FMLA. See, e.g., Mauder v. Metro. Transit Authority of Harris County, Tex., 446 F.3d 574, 580 (5th Cir.

5

2006); Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004); Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998). USA contends that the plaintiff did not make this showing because she never suffered from a "serious health condition" that prevented her from working, and therefore her leave was never entitled to protection under the FMLA. See 29 U.S.C. § 2612(a)(1)(D); Oswalt v. Sara Lee Corp., 74 F.3d 91, 92 (5th Cir. 1996).

This argument USA now presents on appeal is different from the USA's argument in its motion for a Rule 50 judgment urged before the district court. Before the district court, USA argued that because Ford-Evans did not present evidence that she suffered from a "serious health condition" after August 19th, she was not entitled to continued FMLA leave after August 19th. Sellers stated repeatedly in sworn testimony that Ford-Evans had been placed on FMLA leave. USA also referenced these statements in its briefs to the district court. Now USA argues that Ford-Evans was never entitled to FMLA leave because she did not present any evidence of a "serious health condition," and therefore cannot pursue a claim of an interference with FMLA rights. See Mauder, 446 F.3d at 580; Haley, 391 F.3d at 649; Bocalbos, 162 F.3d at 383.

Thus, before we consider the merits of this new argument on appeal, we must first address sua sponte whether USA waived its argument or is now estopped from presenting the argument.

Both Supreme Court and Fifth Circuit case-law support our permitting the appellees to raise arguments on appeal not considered by the district court. The Supreme Court has specifically allowed statutory arguments not presented to the district court that support the affirmance of the district court's judgment. See

6

Schweiker v. Hogan, 457 U.S. 569, 585 & n.24 (1982).[1]  Here, the appellee, like the appellee in Schweiker, is arguing that the judgment below is compelled by the governing statute.  Likewise, we can now permit the appellee to raise its new statutory argument on appeal for the first time. Permitting the appellee to raise such an argument on appeal for the first time is consistent with controlling case-law. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999); Dandridge v. Williams, 397 U.S. 471, 475 n.6 (1970) ("The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court."); United States v. Am. Ry. Express Co., 265 U.S. 425, 436 (1924) ("[I]t is . . . settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."); Commercial Nat'l Bank in Shreveport v. Parsons, 144 F.2d 231, 241 (5th Cir. 1944) (considering argument for affirmance ignored by the district court even though interveners, and not appellees themselves, raised the argument on appeal).  Moreover, we have indicated that

---

[1] In Gregory v. Missouri Pacific R. Co., 32 F.3d 160, 164-65 (5th Cir. 1994), we stated, in dicta, that appellees cannot raise an argument on appeal that was not presented to the district court; however, we precluded the appellee's argument in Gregory because it was ultimately inconsistent with the appellee's arguments before the district court.  See id. at 164 n.12 (distinguishing the case from the Supreme Court's potentially controlling decision in Schweiker by concluding that the appellee in Schweiker raised a "new contention rather than one that was inconsistent with the appellees' position in the district court." (emphasis in original)) (citing Schweiker, 457 U.S. at 584-85 & n.24); see also id. at 167 (Johnson, J., dissenting) (reading the majority decision as concluding that appellee "is estopped from making such an argument on the ground that he took an inconsistent position in the district court."). The preclusion of appellee's inconsistent arguments, as Judge Johnson noted, is properly considered under an estoppel rubric, which is discussed in the next section.

we will accept appellee's arguments for affirming the district court's judgment raised for the first time on appeal if they are fully briefed by both sides. See Maryland Cas. Co. v. State Bank & Trust Co., 425 F.2d 979, 982 (5th Cir. 1970). Here, both parties discuss the dispositive issue of whether Ford-Evans suffered from a "serious health condition" eligible for FMLA protection. The appellee's argument supports a straight-forward affirmance of the district court's judgment. For these reasons, we do not consider USA's new argument to be waived.[2]

Nor do we find USA's argument barred by judicial estoppel. The fact that the defendant may have adopted an inconsistent position below does not inherently estop it from raising this new argument on appeal. A Court of

---

[2] This rule does not apply if the appellee is "attack[ing] the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." El Paso Natural Gas Co., 526 U.S. at 479. The appellee is not attempting to "modify" the judgment so as to increase or decrease the parties' rights but is only requesting this court to affirm the district court's full dismissal of the claim on different grounds. See id. at 480 n.3 (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 119 & n. 14 (1985)); Ayers v. United States, 750 F.2d 449, 457 (5th Cir. 1985). This limitation therefore does not apply to this case.

Admittedly, sister circuit courts are split on whether, as a general principle, an appellee's failure to present an argument to the district court constitutes a waiver of that argument on appeal. See Humphries v. CBOCS West, Inc., 474 F.3d 387, 391 n.1 (7th Cir. 2007) (noting and declining to resolve a conflict among Seventh Circuit decisions as to this issue); compare Kromnick v. School Dist. of Philadelphia, 739 F.2d 894, 899 n.4 (3d Cir. 1984) (applying waiver of argument to appellees if the appellees did not present the argument to the district court) with Leary v. Daeschner, 228 F.3d 729, 741 n.7 (6th Cir. 2000) ("[Appellant] cites cases for the proposition that appellants who do not raise an argument on appeal waive that argument, but he cites no such cases suggesting the same is true for appellees. Indeed, this court can affirm the district court on any basis supported by the record."); see also Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 32 (1st Cir. 2007) (noting in dicta that the appellees, unlike appellants, do not waive arguments by presenting novel theories for affirming the district court's judgment for the first time on appeal). For the reasons stated above, we conclude that Supreme Court and Fifth Circuit case-law supports our decision to consider the appellee's argument in this case.

8

Appeals "may raise judicial estoppel sua sponte in 'especially egregious case[s] wherein a party has successfully asserted a directly contrary position.'" Beall v. United States, 467 F.3d 864, 870 (5th Cir. 2006) (citing United States ex rel Am. Bank v. C.I.T. Constr. Inc. of Tex., 944 F.2d 253, 258 (5th Cir.1991)) (emphasis added). In New Hampshire v. Maine, the Supreme Court listed three factors in determining whether judicial estoppel applies: (1) "First, a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (3) "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. 742, 750-51 (2001). Based on the first factor, the defendant's inconsistent position on appeal is not "directly" nor "clearly" inconsistent with its position before the district court. If we adopted USA's position on appeal that Ford-Evans did not present any evidence of a "serious medical condition" at any material time, this would be fully consistent with the thrust of USA's legal argument before the district court that Ford-Evans did not present any evidence of a "serious medical condition" after August 19th. Moreover, under the second factor, the district court did not rely on its acceptance of the appellee's representation that Ford-Evans was entitled to FMLA leave before August 19th to reach its conclusion; instead it solely relied on the fact that she was not suffering from a "serious medical condition" after August 19th. See Hopkins v. Cornerstone America, 545 F.3d 338, 347-48 & n.2 (5th Cir. 2008) ("[T]he previous court must have accepted the party's earlier position.") (emphasis added). To put it another way, our adoption of USA's position on appeal would not render our

9

decision directly nor clearly inconsistent with the district court's opinion. See U.S. ex rel Am. Bank, 944 F.2d at 258 (citing with approval, Teledyne Industries, Inc. v. National Labor Relations Board, 911 F.2d 1214, 1217-18, 1217 n. 3 (6th Cir.1990), which held that the "purpose of judicial estoppel . . . is designed to prevent parties from contradicting a prior court determination, not themselves."). The final factor also favors USA. The plaintiff had the burden at all times to show her statutory entitlement to FMLA leave and to present evidence of a "serious medical condition" so as to establish a prima facie case for a FMLA interference claim. See Mauder, 446 F.3d at 580; Haley, 391 F.3d at 649; Bocalbos, 162 F.3d at 383. Even after presenting her case fully at trial and briefing it on appeal, the plaintiff did not fulfill this aspect of the FMLA's prima facie case. Allowing the defendant to assert this new argument challenging whether the record establishes a necessary element of the prima facie case would merely return the plaintiff to her original burden to present facts that establishes her entitlement to FMLA leave and protection. See In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 332 (5th Cir. 2007) ("[Permitting the appellee to raise its new argument] will only place the parties in the position they should have occupied . . ."). Moreover, because the plaintiff never requested judicial estoppel and because this is not an "egregious" case, we decline to apply judicial estoppel sua sponte.

Likewise, we also decline to apply sua sponte equitable estoppel to preclude the USA's new appellate arguments. In this circuit, equitable estoppel can also apply to the application of FMLA leave. See Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 359 & n.36 (5th Cir. 2006) (applying equitable estoppel to prevent defendant from changing positions on whether valid FMLA leave was ever granted); see also Duty v. Norton-Alcoa Proppants, 293 F.3d 481,

10

494 (8th Cir. 2002). While there is a circuit conflict over whether equitable estoppel can be pleaded for the first time on appeal, compare My Pie Int'l, Inc. v. Debould, Inc., 687 F.2d 919, 924 (7th Cir. 1982) (declining to allow equitable estoppel pleaded for the first time on appeal), with Irwin v. West End Dev. Co., 481 F.2d 34, 39 (10th Cir. 1973) (allowing the application of equitable estoppel pleaded for the first time on appeal), the party asserting equitable estoppel, at the very least, usually asserts the argument at some stage in the proceedings and alleges the necessary elements for equitable estoppel. See, e.g., Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1122 (9th Cir. 2006); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 456 (6th Cir. 2003); see also F.D.I.C. v. Royal Park No. 14, Ltd., 2 F.3d 637, 641 (5th Cir. 1993) (implying that Rule 8 requires the pleading of estoppel that is part of the plaintiff's affirmative case). The plaintiff did not plead the elements for equitable estoppel. Even assuming arguendo we could sua sponte apply the principles of equitable estoppel,[3] the record does not support its application. Ford-Evans, in testimony, specifically stated:

> [COUNSEL:] Ms. Ford-Evans, prior to August 22, 2003, did you receive any notice from anyone at USA or Cigna that your leave was protected by FMLA?
>
> [Objection raised and overruled.]
>
> [FORD-EVANS:] No, I did not.
>
> [COUNSEL:] Did anyone at USA or Cigna advise you or notify you that FMLA may provide you rights and protections relating to a request for medical certification from a treating doctor?

---

[3] We leave open the possibility that we may decide to apply equitable estoppel sua sponte in a future case.

11

[FORD-EVANS:] No, they did not.

We have stated previously that the defendant-employer must have actually represented to the plaintiff-employee that her leave was covered and/or that she was protected by the FMLA in order to equitably estop the defendant from arguing in court that FMLA does not specifically cover the plaintiff-employee and/or her leave. See Minard, 447 F.3d at 359. Even assuming arguendo that we can apply equitable estoppel sua sponte, equitable estoppel does not apply because USA and CIGNA did not make any representations to Ford-Evans that her leave was protected by FMLA during the time of the relevant events at issue.

Accordingly, we are not barred from considering USA's new argument on appeal that Ford-Evans failed to establish at any material time that she suffered from a "serious health condition" and she is therefore ineligible for FMLA leave and protection.

Ford-Evans never presented sufficient evidence that she was eligible for FMLA leave; thus, she cannot sustain her claim. An employee is eligible for FMLA leave if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); see also Oswalt, 74 F.3d at 92. Ford-Evans only presents evidence for one health condition that allegedly justifies her FMLA leave: chronic laryngitis, which causes her to temporarily lose her voice. However, Ford-Evans admitted in testimony that she was able to do the essential functions of her position at all material times and that she had previously worked for ten months without the use of her voice.

Ford-Evans presents evidence that the health condition restricted her ability to function in only two ways: she needed voice rest and she should not come in contact with chemicals because contact with chemicals may cause

respiratory tract disorders in some individuals. Neither restriction contradicts her statement that she was always, at all material times, able to perform the functions of her position. Both doctors released her to return to work. She had previously worked without her voice for tenth months. Though she alleges evidence of dangerous chemicals in the cushion lab, she also testified that, within the scope of her position, she also worked outside of the cushion lab, so the presence of those dangerous chemicals does not preclude her from working in other areas. Moreover, Dr. Stasney noted that Ford-Evans should not be further exposed to chemicals because "[f]or some individuals, daily exposure to chemicals causes respiratory tract disorders." Dr. Stasney does not identify Ford-Evans as one of those individuals, but merely concludes that an avoidance of chemicals is "the best choice for Ms. Ford-Evans and her employer." Dr. Stasney's precautionary recommendation does not imply that all and any contact with chemicals prevents Ford-Evans from performing the functions of her job; furthermore, even if exposure to chemicals may cause further voice-loss, voice-loss does not prevent Ford-Evans from performing the functions of her job. At most, the voice rest and the precautionary recommendation to avoid chemicals is only a mild or moderate impairment. Even with a mild to moderate impairment, an employee is still considered able to perform the functions of her position for FMLA purposes. See Price v. Marathon Cheese Corp., 119 F.3d 330, 335 (5th Cir. 1997). Furthermore, we have said that FMLA coverage applies only to health conditions that cause or threaten to cause "incapacitation" and where absence from work is "necessary." Mauder, 446 F.3d at 581-82; Murray v. Red Kap Inds., Inc., 124 F.3d 695, 698 (5th Cir. 1997); Price, 119 F.3d at 335. There is no evidence in the record that her health condition, chronic laryngitis, is a "serious health condition" that rendered her incapacitated and unable to work at any time. Consequently, Ford-Evans fails to establish a valid claim for

relief under the FMLA. For these reasons, we now AFFIRM the district court's judgment.