Wendy J. AHRENS, Plaintiff,

v.

**PEROT SYSTEMS CORPORATION,**
Defendant.

No. Civ.A. 3:96–CV–2047–L.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 3, 1999.

Hal K. Gillespie, Susan D. Motley, Gillespie, Rozen, Tanner & Watsky, P.C., Dallas, TX, for plaintiff, Wendy J. Ahrens.

Margaret Donahue Hall, Margaret Wueste Lesesne, Locke Liddell & Sapp L.L.P., Dallas, TX, for defendant, Perot Systems Corporation.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

The court has before it Perot Systems' Motion for Summary Judgment, filed July 24, 1998, and Defendant's Objections to and Motion to Strike Evidence Filed With Plaintiff's Response to Defendant's Motion for Summary Judgment, filed August 18, 1998. Upon careful consideration of the motions, responses, replies, and the applicable law, the court has determined that for the reasons that follow, Perot Systems' Motion for Summary Judgment should be granted, and its Objections to and Motion to Strike Evidence Filed With Plaintiff's Response to Defendant's Motion for Summary Judgment should be denied as moot.

### I. Factual Background

Plaintiff Wendy Ahrens ("Ahrens") worked in sales for Perot Systems Corporation ("Perot Systems") beginning in September 1992,[1] and worked there through December 1, 1995.[2] During her employment with Perot Systems, Ahrens was assigned to various departments and accounts.[3] In November 1994, Ahrens took a medical leave of absence from her job.[4] She returned to work at Perot Systems in February or March 1995.[5] Upon her return from leave, Ahrens was assigned to work in a sales support position, reporting to Johnnie Howard ("Howard"), a female manager at Perot Systems.[6] On December 1, 1995, Perot Systems terminated Ahrens.[7]

### II. Plaintiff's Claims

Ahrens alleges that she was illegally terminated because she is a woman, in

---

1. Plaintiff's First Amended Complaint and Jury Demand ("Amended Complaint").

2. Appendix in Support of Defendant Perot Systems Corporation's Motion for Summary Judgment ("Defendant's App."), at 1281–82.

3. Amended Complaint; Defendant's App. at 1172–77.

4. Defendant's App. at 376; 903; 929.

5. Appendix in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's App.") at 010.

6. Defendant's App. at 1175–76.

7. *Id.* at 1281–82.

violation of Title VII, 42 U.S.C. § 2000e, *et seq.* She further alleges that although she was not disabled, Perot Systems perceived her as an individual with a disability, and therefore her firing also runs afoul of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Perot Systems maintains that her boss (also a woman) had to reorganize her department due to budgetary constraints and decided that the way to do this was to eliminate Ahrens' position.

## III. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v.*

*Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id., Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## IV. *Defendant Perot Systems' Motion for Summary Judgment*

Perot Systems moves for summary judgment on Plaintiff's claims in their entirety. In support of its motion, Perot systems argues that there is no genuine issue of material fact present in the record concerning Ahrens sex and disability discrimination claims. Perot Systems further argues that judicial estoppel should apply due to inconsistent statements she made in a previous lawsuit, which would prevent her from recovering against Perot Systems here, and that Ahrens should not be allowed to survive summary judgment based upon her inconsistent testimony in this lawsuit.

### A. *Judicial Estoppel*

#### 1. *The First Lawsuit*

On December 1, 1995, the same day she was terminated by Perot Systems, Ahrens

filed suit in the 192nd Judicial District Court of Dallas County, Texas. This lawsuit was styled *Wendy J. Ahrens, et al. v. Image Sciences, Inc., Michael D. Andereck, James M. Morton, Evan Chesler, Cravath, Swain & Moore, and International Business Machines Corporation,* Cause No. 95–12586–K (the "First Lawsuit") .[8] Perot Systems was not a party to the First Lawsuit.[9] In the First Lawsuit, Ahrens specifically complained of the conduct of Chesler, Cravath Swain, and IBM (the "IBM Defendants") by stating that they had disparaged her to Perot Systems, causing her employment relationship with Perot Systems to deteriorate.[10]

Defendants in the First Lawsuit removed the case to federal court and it was assigned to United States District Judge Jorge A. Solis.[11] Cravath Swain and Evan Chesler then moved to dismiss. In her response, Ahrens submitted a sworn declaration that stated Cravath Swain and Chesler had interfered with her employment relationship with Perot Systems, and that "because of the interference, my employment with Perot Systems became more burdensome and difficult, and I was ultimately terminated." [12]

Next, Ahrens filed a motion to remand the First Lawsuit back to state court.[13] In support of the motion to remand, Ahrens filed another declaration, which adopted her statements in the previous declaration and added that "the IBM defendants disparaged me to Perot Systems and requested that Perot Systems terminate me." [14]

Judge Solis granted her motion and remanded the First Lawsuit .[15]

The First Lawsuit continued. Ahrens filed a verified application for injunctive relief in state court. In her verified pleading, Ahrens stated "Perot Systems terminated Wendy Ahrens' employment as a direct result of the interference by the IBM Defendants...." [16] She also supported this pleading with an affidavit that contained the same statement.[17]

When Ahrens was deposed in the First Lawsuit in October 1996, Ahrens testified as follows:

Q: Well, why were you terminated from Perot Systems?

A: I was terminated because Evan Chesler tortiously interfered with my employment contract.[18]

In November 1996, Ahrens responded to a special appearance filed in the First Lawsuit. In that response she again stated that she was terminated by Perot Systems due to the interference of the defendants in that case.[19]

## 2. *This Lawsuit*

In July of 1996, Ahrens sued Perot Systems, alleging that her termination was due to gender. Later that year she amended her complaint to add a claim for disability discrimination.[20] This lawsuit was originally assigned to Judge Solis, who had presided over the first lawsuit while it was pending in federal court.

8. Defendant's App. at 1321–36.

9. *Id.*

10. *Id.*

11. *Id.* at 1317–19.

12. *Id.* at 1353.

13. *Id.* at 1354–55.

14. *Id.* at 1393.

15. *Id.* at 1412–1418.

16. *Id.* at 1421.

17. *Id.* at 1428.

18. *Id.* at 1312.

19. *Id.* at 1436.

20. Ahrens filed two charges of discrimination with the EEOC prior to filing this lawsuit. She received her right to sue letters related to these charges on May 3, 1996 and August 28, 1996.

In July 1998 Ahrens was deposed in this lawsuit. She was asked a question identical to the one in her prior deposition:

Q: Why were you terminated from Perot Systems?

A: I was terminated from Perot Systems because of my sex: Female; that women weren't given the opportunity to be successful at Perot Systems that men would be; and that—because of the fact that I was considered damaged goods or handicapped and unable to provide value to the company.[21]

### 3. *Applicability of Judicial Estoppel*

Perot Systems argues that Ahrens' sworn statements in the First Lawsuit directly contradict her statements in this lawsuit, and that therefore the doctrine of judicial estoppel should apply to prevent her from recovering against Perot Systems in this case.

■ Judicial estoppel applies where a party attempts to contradict his own prior sworn statements in the same or an earlier legal proceeding. *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 303 (5th Cir. 1998); *Ergo Science, Inc. v. Martin,* 73 F.3d 595, 598 (5th Cir.1996); *United States ex rel. Am. Bank v. C.I.T. Construction, Inc. of Texas,* 944 F.2d 253, 258–59 (5th Cir.1991). The majority of courts will not apply the doctrine unless the party has successfully persuaded the court to accept its earlier position. *Afram Carriers,* 145 F.3d at 303; *C.I.T. Construction,* 944 F.2d at 259; *Moore v. United Services Automobile Association,* 808 F.2d 1147, 1153 n. 6 (5th Cir.1987). Judicial estoppel prevents inconsistent results, precludes litigants "from playing fast and loose" with the courts, and prohibits parties from deliberately changing positions to suit their needs at the moment. *Ergo Science,* 73 F.3d at 598, *citing United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d

211 (1994). Therefore, the two necessary elements of judicial estoppel are 1) contradictory sworn statements; and 2) reliance on the earlier statement by the court.

### a. *Contradictory Statements*

As outlined above, Perot Systems maintains that Ahrens' sworn statements in the First Lawsuit directly contradict her statements in this lawsuit. Ahrens argues that the statements are not inconsistent with each other. Specifically, she states that in her deposition in the First Lawsuit, she was not asked about possible discrimination by Perot Systems. Therefore, there is no reason she would have brought that up as a reason for her termination. She next argues that the statements are not inconsistent because she never said that the interference of the defendants in the First Lawsuit was the *sole* reason for her termination.

■ Both of these arguments amount to no more than ineffectual hair splitting. Ahrens was asked the same unequivocal, open-ended question at both depositions. Both questions concerned the exact same event: Ahrens' termination by Perot Systems. In neither instance was the question qualified in any way concerning the universe of possible reasons for her discharge, nor was it qualified as to whether particular individuals or entities had involvement in the termination. The court is not convinced that judicial estoppel would not apply here.

Finally, Ahrens argues that the statements are not inconsistent because she has never expressly denied that gender and disability discrimination caused her termination. This argument will not prevail either. Ahrens has cited no law which establishes that her second statement cannot be inconsistent because she has never directly denied it; moreover, this is clearly not a requirement under the doctrine of judicial estoppel. Perot Systems has satis-

---

21. Defendant's App. at 801.

factorily established the inconsistency of Ahrens' sworn statements in the two cases.

### b. *Adoption of the Earlier Statement by the Court*

 Perot Systems also must show that Ahrens' prior inconsistent statement was adopted or relied upon by the court in the First Lawsuit. *Afram Carriers,* 145 F.3d at 303; *C.I.T. Construction,* 944 F.2d at 259. Statements explicitly made for the purpose of inducing the court's reliance thereon are subject to judicial estoppel. *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1047 (5th Cir.1998). Also, where a court has accepted the prior statement as true, judicial estoppel can be applied. *Exxon Corporation v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1078 n. 9 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997). Judicial acceptance of the statement is not limited to situations where a party ultimately prevails on the merits. *Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1354 n. 73 (S.D.Tex. 1995), *citing Teledyne Industries, Inc. v. N.L.R.B.,* 911 F.2d 1214 (6th Cir.1990). "Judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id., quoting Teledyne,* 911 F.2d at 1218.

Ahrens argues that she cannot be judicially estopped because the First Lawsuit was never fully litigated on the merits. This position is contrary to the above case law, which does not require ultimate success on the merits, only that the court has adopted the previous inconsistent statement. The record establishes that in the First Lawsuit, Ahrens successfully moved to remand the case back to state court. In support of her motion to remand, Ahrens submitted a declaration in which she swore to the court that Perot Systems discharged her because of the alleged tortious interference of several of the defendants to that case. These statements were made for the explicit purpose of convincing the court

that it should remand the First Lawsuit to state court; in other words, the statements were made to induce the court's reliance on them. *Hidden Oaks,* 138 F.3d at 1047.

 On a motion to remand, all doubts as to removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996). In the First Lawsuit, the defendants asserted in their notice of removal that Ahrens had joined two groups of unrelated defendants into one lawsuit for the purpose of defeating federal diversity jurisdiction. Thus, Judge Solis analyzed the remand issue as one of fraudulent joinder. In determining a claim of fraudulent joinder, the district court is required to evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested fact issues in the plaintiff's favor. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 548 (5th Cir. (Unit A) 1981). In his opinion remanding the case, Judge Solis specifically stated that the court had construed all disputed questions of fact and law in Ahrens' favor.[22] Therefore, the court in the first lawsuit accepted the testimony of Ahrens as true, and necessarily relied on it in deciding to remand the case. *See Exxon Corp.,* 109 F.3d at 1078 n. 9. Now Ahrens is asking the court to rely on her contradictory statements in this lawsuit to deny Perot Systems' motion for summary judgment.

The doctrine of judicial estoppel prevents this type of factual manipulation and should be applied here. Ahrens is estopped by her prior sworn statements made in the two declarations she submitted in the First Lawsuit, and which were relied upon by the court in granting her motion to remand. Therefore, Ahrens is prevented from using her contradictory

**22.** Defendant's App. at 1416.

statements here to defeat summary judgment. Viewing the remaining evidence in the record in the light most favorable to Ahrens, the record shows that Ahrens has failed to raise a genuine issue of material fact regarding the essential elements of these claims. Perot Systems is therefore entitled to judgment as a matter of law on all claims asserted by Ahrens.

## B. *Ahrens' Discrimination Claims*

Although the court has concluded that Perot Systems is entitled to judgment as a matter of law based upon the theory of judicial estoppel, the court will proceed to address Ahrens' discrimination claims on their merits. Upon review of these claims, the court finds that Perot Systems is further entitled to summary judgment on Ahrens' discrimination claims because there is no genuine issue of material fact present in the summary judgment record concerning Perot Systems' alleged liability to Ahrens under either Title VII or the ADA. Thus, for this additional reason, Perot Systems is entitled to summary judgment on these claims.

### 1. *Applicable Standard of Proof*

Ahrens and Perot Systems disagree regarding the applicable standard of proof on Ahrens' claims for gender and disability discrimination. Ahrens maintains that the record contains "direct evidence" of both disability and sex discrimination, so therefore the court should apply the "mixed-motives" analysis found in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216–17 (5th Cir.1995). Perot Systems argues that this is not a "direct evidence" case and therefore the court should follow the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting framework. The Fifth Circuit has made it clear that *McDonnell Douglas* does not apply to mixed-motive cases. *Mooney*, 54 F.3d at 1216, *citing Trans World Airlines v. Thur-*

*ston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Thus, the court must determine whether the mixed-motive analysis applies here.

To establish that the mixed-motive analysis should apply, a plaintiff must present "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as *directly reflecting* the alleged discriminatory attitude...." *Mooney*, 54 F.3d at 1217–18 n. 12, *quoting Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448–49 (8th Cir. 1993) (emphasis added). In other words, to apply *Price Waterhouse*, the employee must set forth evidence showing that the employer *actually relied* on the discriminatory factor in making its decision. *Mooney*, 54 F.3d at 1218, *quoting Langley v. Jackson State University*, 14 F.3d 1070, 1075 (5th Cir.), *cert. denied*, 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994) (emphasis in original). Ahrens relies on *Mooney* to establish that the alleged statements of fellow Perot Systems employees, including her supervisor, rise to the level of direct evidence of discrimination.

In *Mooney*, the Fifth Circuit evaluated the evidence in that case to determine whether the plaintiff had been entitled to a mixed-motives jury instruction under *Price Waterhouse*. 54 F.3d at 1217. The "fundamental prerequisite" to a mixed-motives analysis is the presence of direct evidence of discrimination. *Id.* "Direct evidence" is defined as evidence which, if believed, establishes discriminatory animus without inference or presumption. *Id.; Brown v. East Mississippi Electric Power Ass'n*, 989 F.2d 858 (5th Cir.1993). The supposed "direct evidence" of discrimination presented by the *Mooney* plaintiffs consisted of the following: statements that one plaintiff was to be replaced by a "younger and cheaper" employee, that the reason for plaintiff's discharge was that it "must have been your age", that plaintiff would have a "good case of age discrimination", and that the company was "going to get rid of the older employ-

ees with the higher salaries." 54 F.3d at 1218. The trial court refused to give a *Price Waterhouse* instruction based upon this evidence. *Id.* at 1216. The Fifth Circuit agreed and affirmed, holding that these statements did not provide direct evidence of discriminatory animus. *Id.* at 1218–19. When taken at face value, the statements did not prove discriminatory animus unless an inference or presumption were drawn from them. *Id.* at 1218. Therefore, a *Price Waterhouse* analysis was not appropriate. *Id.* at 1216, 1218.

■ Ahrens relies on the following "direct evidence" of discrimination to argue that a mixed-motives analysis should be applied here: allegedly being referred to as "damaged goods"; being told that women were not given the same opportunities to use their talents as men; being told that she was paid too much for a woman and that she could not have stock options because they were being reserved for men; being told that Rob Nash, a Perot Systems manager, did not want women in sales; being told that she received only a satisfactory job rating and did not receive a salary raise because she was on disability leave; and being told that the amount of leave she had taken did not help her employment situation.[23] These statements

are similar to the statements relied upon by the *Mooney* plaintiffs, in that while the court or a jury could infer from some or all of these statements that there was a discriminatory motive behind Perot Systems' decision to terminate Ahrens, they do not directly prove that this was the case. 54 F.3d at 1218. Therefore, the court declines to apply the *Price Waterhouse* mixed-motives analysis as requested by Ahrens. The applicable legal standard in this case is the *McDonnell–Douglas* burden-shifting analysis.

### 1. *Sex Discrimination*

To establish a prima facie case of sex discrimination, Ahrens must prove the following elements: 1) she was discharged; 2) she was qualified for the position; 3) she was a member of a protected class; and 4) she was replaced by a male or was otherwise discharged because she is a female.[24] *McDonnell–Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 654 (5th Cir.1996). Perot Systems does not dispute Ahrens' ability to establish the first three elements of her prima facie case; however, it claims that Ahrens' prima facie case necessarily fails because it did not replace her with a male. Ahrens responds that based upon the alleged statements of her supervisor,

**23.** Plaintiff's App. at 002–005; 011–013; 019–025; 033; 035; 105–06.

**24.** Ahrens argues for a slightly different prima facie standard here, which is applied in reduction in force ("RIF") cases. In a RIF case, a prima facie case is established by showing that 1) plaintiff is a member of a protected class; 2) she suffered an adverse employment decision; 3) she was qualified to assume another available position at the time of the discharge or demotion; and 4) evidence exists from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching its decision. *Woodhouse v. Magnolia Hospital,* 92 F.3d 248, 252 (5th Cir.1996) (applying RIF prima facie standard in ADEA case). The "crucial inquiry", however, in RIF cases is why the plaintiff was selected for termination while other employees who do not belong to the protected class are retained in similar positions. *Id.; Brown,* 82 F.3d at 654. The

specialized prima facie standard which has been developed for RIF cases does not apply unless the company lays off protected individuals while retaining non-protected class individuals in *similar* positions. *Brown,* 82 F.3d at 654. Here, Ahrens has made no such allegation; therefore her argument that the prima facie standard for RIF cases should be applied is misplaced. Furthermore, even if the court were to apply the prima facie standard advocated by Ahrens, she is unable to meet at least one prong of the test, that she was qualified to assume another available position at Perot Systems. Ahrens' evidence on this point is a lengthy list of available jobs which is unauthenticated and consists of inadmissible hearsay. Plaintiff's App. at 054–099. Ahrens has produced no evidence showing that she was qualified for any of these jobs, and the court is not obligated to scour the record in search of such evidence. *Ragas,* 136 F.3d at 458.

Ms. Howard, that "women at Perot Systems were not always given opportunities to use their talents as readily as men"[25] is sufficient to establish that a jury could reasonably infer that Ahrens' termination was due to her sex. Viewing this evidence in the light most favorable to Ahrens, the court agrees that she has successfully established a prima facie case of sex discrimination.

 Given that Ahrens has established her prima facie case, the court must give Perot Systems the opportunity to articulate a legitimate, non-discriminatory reason for its decision to terminate Ahrens from her job. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993). The record reflects that Ahrens' supervisor Johnnie Howard needed to maintain her departmental expenses at the same level while increasing revenue.[26] Howard chose to accomplish this objective by adding a sales person and eliminating Ahrens' non-revenue producing position.[27] The Fifth Circuit has stated that these types of concerns are legitimate, nondiscriminatory reasons for an employee's discharge. *Armendariz*, 58 F.3d at 150; *Bodenheimer*, 5 F.3d at 957–58. Therefore, Perot Systems has successfully carried its burden of articulating a legitimate, non-discriminatory reason for Ahrens' discharge.

Ahrens must now show that Perot Systems' articulated reasons for its decision to terminate her are merely a pretext for discrimination; in other words that a discriminatory motive is the true reason she was discharged. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Bodenheimer*, 5 F.3d at 958. To carry her burden here, Ahrens must tender evidence raising a fact issue whether Perot's Systems' proffered

reasons for her termination are a pretext for discrimination. *Id.* This requires her to demonstrate "discrete facts" showing a causal nexus between her gender and Perot Systems' decision to discharge her. *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). Here, Ahrens merely presents evidence which, at best, might cast some doubt regarding whether Howard's department could have met its budgetary goals without adding a salesperson. *See Moore*, 990 F.2d at 815, *quoting Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir.1990) (to demonstrate pretext, plaintiff must do more than merely "cast doubt on whether [the employer] had just cause for its decision"). Ahrens further cites to the alleged discriminatory comments made by various persons at Perot Systems; however, nowhere has she established the requisite causal nexus between this evidence and the decision to terminate her employment.

Moreover, Ahrens' sworn declarations in the first lawsuit make it impossible for her to meet this prong of the test. In those declarations, Ahrens swore that the cause of her termination was the tortious interference of several of the defendants to that case. This precludes Ahrens from showing a connection between the alleged discriminatory remarks and her ultimate termination. Ahrens has failed to set forth evidence raising a genuine issue of material fact concerning pretext on her sex discrimination claim; therefore, Perot Systems is entitled to summary judgment on Ahrens' Title VII cause of action.

### 3. *Disability Discrimination*

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12102(2). A disability is defined as a physical or mental impairment "that substantially limits one

---

**25.** Plaintiff's App. at 033, 105–07.

**26.** Defendant's App. at 1189, 1191–92, 1197.

**27.** *Id.*

or more of the major life activities of such individual". *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 805 (5th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998). "Substantially limits" generally means that an individual is (i) unable to perform a major life activity that the average person in the general population can perform; (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity. *Id., citing* 29 C.F.R. § 1630.2(j)(1). "Temporary, non-chronic impairments of short duration, with little or no longer term or permanent impact, are usually not disabilities." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir.1998).

Even persons who are not actually disabled can be covered by the ADA, where they are "regarded as having such an impairment." *Id.* An individual is "regarded" as disabled under the ADA if (i) she has a physical or mental impairment that does not substantially limit major life activities but is treated by the employer as constituting such limitation; (ii) she has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (iii) she has none of the impairments set forth in the regulations but is treated by the employer as having a substantially limiting impairment. *Id.* at 806; *Ellison v. Software Spectrum,* 85 F.3d 187, 192 (5th Cir.1996), *citing* 29 C.F.R. § 1630.2(1). Ahrens claims that she has none of the impairments contained in the regulations but that Perot Systems

regarded her as having a substantially limiting impairment and thus terminated her employment because she was so regarded.[28]

To establish a prima facie case of disability discrimination, Ahrens must show that 1) she is disabled under the ADA; 2) she is qualified for the job; 3) she suffered an adverse employment action; and 4) she was replaced by a non-disabled person or otherwise treated unfairly due to her disability. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). Ahrens bases her claim of perceived disability on alleged comments by several Perot Systems employees (who did not supervise Ahrens and did not make the decision to terminate her employment)[29] that she was "damaged goods",[30] as well as alleged comments regarding the fact that Ahrens had taken disability leave in the past.[31]

Ahrens apparently interprets these remarks to mean that Perot Systems expected she would be taking more medical leave in the future; however, she has produced no competent evidence to support this factual allegation. Her interpretation of the remarks consists of no more than her subjective belief as to what the alleged comments meant, and does not raise a fact issue concerning her disability claim. *See Waggoner v. City of Garland, Texas,* 987 F.2d 1160, 1164 (5th Cir.1993). Furthermore, that Perot Systems knew Ahrens had taken medical leave in the past does not establish that she is disabled under the ADA or that Perot Systems regarded her as such. A physical impairment, standing alone, does not necessarily constitute a disability. *Ellison,* 85 F.3d at 191 n. 3.

---

**28.** Defendant's App. at 93–96; 98–99; 375; 377–79; 393–94; 549–52.

**29.** Perot Systems maintains that Johnnie Howard alone made the decision to eliminate Ahrens' position. The evidence in the record to this effect appears to be undisputed. Defendant's App. at 1278–79; 1295.

**30.** Plaintiff's App. at 002–005, 011–013; 018a, 106.

**31.** *Id.* at 016–018; 027–029; 107.

Ahrens further references a comment made by Ms. Howard wherein Howard expressed her doubts about Ahrens' ability to perform her job.[32] In response to this alleged comment, Ahrens assured Howard that her doctor had said she was capable of performing.[33] Taking this exchange as true, it is still questionable whether Ahrens has established a prima facie case of discrimination based upon disability; however, for summary judgment purposes the court will give Ahrens the benefit of the doubt and assume that she has done so.

 Next, Perot Systems must articulate a legitimate non-discriminatory reason for Ahrens' termination. As discussed above, Perot Systems has done so. See p. 14, *infra*. Thus, the burden shifts back to Ahrens to set forth evidence raising a fact issue whether Perot Systems' reasons for terminating her employment are merely a pretext, whereas the true reason she was discharged was due to Perot Systems intent to discriminate against her due to her alleged "perceived disability." *Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Bodenheimer*, 5 F.3d at 958.

Ahrens must set forth "discrete facts" showing a causal nexus between her alleged disability and Perot Systems' decision to discharge her. *Moore*, 990 F.2d at 819. Ahrens has failed to do so. Her attempts to cast doubt on the true budgetary situation in Ms. Howard's department will not permit her to survive summary judgment. *Id.* at 815. Ahrens has further failed to demonstrate any causal nexus between the alleged comments concerning her disability and her discharge.

Ahrens has compounded the difficulties with her case by swearing that the cause of her termination was the tortious interference of several of the defendants to the first lawsuit. Therefore, Ahrens is unable to demonstrate a connection between the alleged discriminatory remarks and her discharge. There is no genuine issue of fact present here concerning whether Perot Systems' stated reason for Ahrens' termination was actually a pretext for disability discrimination; therefore, Perot Systems is entitled to summary judgment on Ahrens' ADA claim.

### C. *Mental Anguish*

Perot Systems has further moved for summary judgment on the "mental anguish" element of Ahrens' compensatory damages claim. Perot Systems states that there is no evidence in the record to raise a fact issue concerning whether Ahrens has actually suffered mental anguish as alleged. Given the court's ruling that Perot Systems has no liability to Ahrens under either Title VII or the ADA, this portion of Perot Systems' motion is of no moment and will not be considered by the court.

### V. *Perot Systems' Objections to and Motion to Strike Summary Judgment Evidence*

Perot Systems has lodged numerous objections to Ahrens' summary judgment evidence. In reaching its decision, the court did not rely on the challenged evidence. Therefore, Defendant's Objections to and Motion to Strike Evidence Filed With Plaintiff's Response to Defendant's Motion for Summary Judgment is denied as moot.

### VI. *Conclusion*

For the reasons previously stated by the court, no genuine issue of material fact exists with respect to Ahrens' claims of discrimination, and Perot Systems is entitled to judgment as a matter of law. Perot Systems is entitled to summary judgment on Ahrens' claims for sex and disability discrimination under Title VII and the ADA, respectively. Therefore, it is hereby

**ORDERED** that Defendant Perot Systems Corporation's Motion for Summary

---

**32.** *Id.* at 014–015.

**33.** *Id.* at 015.

Judgment is **GRANTED.** Ahrens' claims for sex discrimination under Title VII and disability discrimination under the ADA are dismissed with prejudice. It is further

**ORDERED** that Defendant's Objections to and Motion to Strike Evidence Filed With Plaintiff's Response to Defendant's Motion for Summary Judgment is **DENIED AS MOOT.** Judgment will be entered by separate document.