Darwin PEGUESE

v.

**J.R. BORUP et al.**

**Civil Action No. G–00–519.**

United States District Court,
S.D. Texas,
Galveston Division.

June 8, 2001.

Ted C. Litton, Royston Rayzor Vickery and Williams, Houston, TX, for Ted C. Litton.

James T. Brown, Legge Farrow Kimmitt and McGrath, Houston, TX, for JR Borup, JW Coonrod, Michael T. Godinich, JM Lane, Wendy L. Morrison, JH Smith, George W. Wyllie, Galveston–Texas City Pilots, Galtex Pilots Service Corporation, Galveston–Texas City Pilots, Galtex Pilots Service Corporation.

Reginald E. McKamie, Houston, TX, for Darwin Peguese.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AS MOOT

KENT, District Judge.

Plaintiff Darwin Peguese brings this suit against Defendants claiming that they discriminated against him on the basis of race. in not selecting him to be a Galveston deputy pilot. He brings claims under 42 U.S.C. §§ 1981(a), 1985(3). In addition, he brings state law claims for fraud, intentional infliction of emotional distress, and conspiracy to violate his constitutional right to contract. Now before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Motion for Class Certification. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**. Consequently, Plaintiff's Motion for Class Certification is **DENIED** as moot.

## I. BACKGROUND

Plaintiff, a resident of Gary, Indiana, is a licensed maritime officer with eleven years of experience and three years of prior Navy experience, with an honorable discharge. Defendants are a group of maritime pilots, known collectively as Galveston–Texas City Pilots ("Pilots"), and a corporation, Galtex Pilots Service Corporation ("Galtex"). The Pilots are maritime ship pilots who provide local nautical knowledge about Galveston and Texas City navigational waters to ship captains of seagoing vessels. They assist seagoing captains with the arrival and departure of their ships from the Galveston sea buoy to various berths in Galveston County. Galtex is a corporation owned by the Pilots and alleged to employ Deputy Pilots, own property, pay employees, sign leases, and conduct other day-to-day business for the Pilots.

Plaintiff, an African–American, first applied to the Pilots in 1993. Since that time, Plaintiff has continued to inquire regarding positions and to make applications. In February of 2000, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the Pilots, alleging racial discrimination. Shortly thereafter, Plaintiff filed another application with the Pilots and was interviewed in Houston for the position of deputy pilot. He was not hired, and he alleges that the Pilots did not even. vote on his application. Plaintiff claims that, in addition to discriminating against him on the basis of race, Defendants conspired to retaliate against Plaintiff because he filed a claim against them with the EEOC. Defendants ultimately hired an African–American for the position which Plaintiff sought. Plaintiff alleges that in the. approximately 150 year existence of the Pilots, no African–American had been selected as a deputy pilot until the Pilots hired an African–

American in May of 2000. Plaintiff contends that the Pilots hired an African–American in his place solely to thwart his EEOC complaint and to keep him out of the Pilots.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## III. PLAINTIFF'S FEDERAL CLAIMS

### A. Legal Standard

■ Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981. Section 1985 prohibits conspiracies to violate rights independently protected by the laws and Constitution. *See* 42 U.S.C. § 1985. In order to recover for racial discrimination in the making and enforcement of contracts under § 1981, Plaintiff must demonstrate intentional discrimination. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d

698, 714 (5th Cir.1994). To recover damages for a conspiracy to deny individuals the equal protection of the laws under § 1985, Plaintiff again must demonstrate that Defendants were motivated by an invidious discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Almon v. Sandlin*, 603 F.2d 503, 505 (5th Cir.1979).

In this case, the key determination in Plaintiff's § 1981 and 1985 claims is the existence, or nonexistence, of intentional racial discrimination. Because the crucial issue in both claims is the same, the Court will explicitly discuss only the § 1981 claim, but its discussion applies to Plaintiff's § 1985 claim as well. *See Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 n. 2 (5th Cir.), *modified en banc*, 819 F.2d 545 (5th Cir.1987); *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir.1982) (noting that even if the acts of the defendants were considered to have risen to the level of independent illegal actions, a prima facie case under § 1985(3) still failed because plaintiff could not ascribe to the defendants any racially-based motive); *Ramirez v. Sloss*, 615 F.2d 163, 169 (5th Cir.1980).

In general, there are two ways a plaintiff can show he was a victim of intentional discrimination. "A plaintiff can prove discriminatory animus by direct evidence, or by an indirect or inferential method of proof." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir.1995). If the plaintiff elects the former approach, the plaintiff must offer "direct" evidence of discrimination, defined as "evidence that, if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir.1996). The clearest

example of "direct evidence" of discrimination would be "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994) (Posner, C.J.); *see also Mooney*, 54 F.3d at 1217–18 (analyzing characteristics of direct evidence).

Alternatively, a plaintiff may elect to prove the fact of intentional discrimination via the indirect or inferential approach. The indirect approach is governed by the familiar, tripartite burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *Armstrong v. City of Dallas*, 997 F.2d 62, 65 n. 2 (5th Cir.1993) (applying the burden shifting analytical framework first established in *McDonnell Douglas* to analyze claims of intentional discrimination). However, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 617, 83 L.Ed.2d 523 (1985); *see also Brady v. Fort Bend County*, 145 F.3d 691, 711 (5th Cir.1998) (citing *Thurston*); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (same); *Ahrens v. Perot Sys. Corp.*, 39 F.Supp.2d 773, 780 (N.D.Tex.1999) (rejecting plaintiff's contention that she had stated a "direct evidence" case).

#### B. *Lack of Qualification*

] Being qualified for the position sought is a *sine qua non* of a claim for racial discrimination, both in direct evidence and indirect evidence cases.[1] A per-

1. In cases involving the indirect method of proof under the *McDonnell–Douglas/Burdine*

son who is not qualified, like a person who has not applied for the position or a person not of the protected class, does not have standing to complain of invidious racial animus. In this case, Plaintiff was unqualified in the starkest of terms: Defendants were legally barred from selecting him. It is undisputed that Plaintiff was not certified by the Board of Pilot Commissioners for the Port of Galveston County ("Pilot Board")[2] as qualified to be a deputy pilot. Thus, under Tex.Transp.Code Ann. § 67.038, it would have been illegal for Defendants to select Plaintiff as a deputy pilot.

Plaintiff argues, however, that Defendants should not be able to use his lack of qualification as a defense because they contributed to his not being certified. This argument fails. Plaintiff's theory rests on the fact that Defendants instructed him to send his application to them instead of directly to the Pilot Board.[3] Initially, Plaintiff suggested that Defendants may not have forwarded his application or altered it in some way. Based on these allegations, which the Court accepted as true and viewed in the light most favorable to the Plaintiff, the Court denied Defendants' earlier filed Motion to Dismiss. *See Peguese v. Borup*, 129 F.Supp.2d 1048, 1050–51 (S.D.Tex.2001) (Kent, J.). As the Court stated:

> framework, this is an explicit part of a plaintiff's prima facie case, whereby a plaintiff must show: (1) he belongs to a protected group, (2) he was qualified for the position held or sought, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class *or* he was treated less favorably than other similarly situated *or* otherwise show that he was subjected to adverse treatment due to his race. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.1998); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985). Being qualified is also a requirement in cases involving direct evidence of discrimi-

If Defendants misled Plaintiff into thinking that they would send his application to the Pilot Board for consideration and intentionally failed to do so in an effort to create a pretext for not hiring him, Plaintiff may well have an actionable claim. If it turns out, however, either that Plaintiff did not meet the requirements to be a deputy pilot or that the Board did in fact receive Plaintiff's unaltered application and chose not to certify Plaintiff, then Plaintiff will not be able to satisfy his prima facie case. These factual issues are to be resolved in the context of a motion for summary judgment or at trial, not in the context of a motion to dismiss.

*Id.* at 1052.

Now, with its Motion for Summary Judgment, Defendants provide evidence that Plaintiff's application was timely forwarded to the Pilot Board for its consideration. *See Defs.' Mot. for Summ. J., Exhibit C, Aff. of Captain Wendy L. Morrison, at ¶ 3*. In his deposition, Plaintiff admitted upon inspecting the application, that it was not altered other than being stamped as received. *Defs.' Mot. for Summ.J., Exhibit A, Depo. of Darwin Peguese, at 129*. The reason that Plaintiff's application was denied was that Plaintiff had not completely filled it out. *Defs.' Mot. for Summ.J, Exhibit D, Affs. of Board Members, at ¶ 5*. Specifically,

natory intent. *See Wille v. City of Moraine*, 1996 WL 1061506, *5 n. 3 (S.D. Ohio Jan.2, 1996).

**2.** The Pilot Board is a body created by the Texas Legislature and governs pilot service in Galveston County. Tex.Transp.Code Ann § 67.017 (Vernon 1999). It is not a party to this suit.

**3.** As a courtesy, the Pilots accept applications on behalf of the Pilot Board, which does not have a full-time staff. *Defs.' Mot. for Summ. J., Exhibit D, Affs. of Board Members, at ¶ 3*.

Plaintiff did not: (1) explain why he left prior jobs, (2) include phone numbers for his references, and (3) identify supervisors at prior jobs. *Id.; Defs.' Mot. for Summ. J., Exhibit D(B), at 1.* As a result, the Pilot Board did not place Plaintiff on the list of qualified pilots and Defendants were thus legally barred from hiring him.

Plaintiff does not controvert the foregoing evidence.[4] Instead, he provides evidence that Defendants routinely informed applicants that their applications were incomplete and gave the applicants a chance to correct the errors prior to the applications being forwarded to the Pilot Board. *See Plaintiff's Resp. to Defs.' Mot. Summ.J., Exhibit 1, Transcript of Conversation with William Kern, at 11–12.* He complains that he was not given the same accommodation. Plaintiff's evidence consists of surreptiously recorded telephone conversations he had with William Kern III, a partner in the pilot association, who told Plaintiff that one of the other pilots routinely sent out letters to applicants informing them if their applications were incomplete. *Id.* Because the other applicants were white, Plaintiff infers that the Pilots' failure to inform him of the deficiencies in his application was part of the conspiracy to avoid hiring him. Kern did not state during the recorded conversation, however, that Plaintiff was singled out for this treatment, just that it was routine practice for Defendants to inform applicants. In fact, it was Plaintiff who informed Kern that he had received no such correspondence. *Id.*

██ Had Plaintiff brought forth evidence that Defendants did not forward his application to the Pilot Board or tampered with it to prevent his qualification, the Court would be inclined to deny the Motion for Summary Judgment. As a matter of justice and common sense, Defendants should not be able to hide behind the fact that Plaintiff was not qualified if they were the ones responsible for preventing his qualification. This is not the case here, however. Simply failing to extend Plaintiff the courtesy of informing him of omissions on his application before forwarding it to the Pilot Board is not tantamount to stymying Plaintiff's application. The Pilots had no duty to assist in this manner. There was nothing unclear or uncertain about what information was requested. The application form instructed Plaintiff to provide the phone number of personal references. *See Defs.' Mot. for Summ.J., Exhibit D(B), at 1.* Moreover, in the section for employment history, there were blanks for providing the supervisor's name and reason for leaving. *Id.* at 3–5. Any person completing the application should have realized that this basic information would be essential for a successful application. Plaintiff has not given any explanation for why he omitted this information. As a result of Plaintiff's omissions, the Pilot Board, not a party to this suit, did not place Plaintiff's name on the list of those certified to be deputy pilots. *Defs.' Mot. for Summ.J, Exhibit D, Affs. of Board Members, at ¶ 5.* With the Plaintiff's lack of qualification being his own fault, the Court must **GRANT** Defendants' Motion for Summary Judgment. Defendants should not be put in the untenable position of having to either have violated

---

4. Defendants' Motion spends much time attempting to refute a suggestion that they switched a signed physical examination form attached to Plaintiff's form for an unsigned one. Plaintiff, however, does not raise any such argument in his Response. Moreover, Defendants present evidence that Plaintiff's application would have been denied regardless of the state of his physical examination form. *Defs.' Mot. for Summ.J., Exhibit D, Affs. of Board Members, at ¶ 6*

the law to hire Plaintiff or face liability for not hiring him.

By granting Defendants' Motion for Summary Judgment, the Court by no means condones or sanctions any racial animus which may exist on the part of Defendants. Mr. Kern's statements during the recorded phone conversation, if believed, would indicate that Defendants had a policy of not hiring African–Americans.[5] Such policy would be completely intolerable. Defendants of course vigorously dispute the accusation, arguing that Kern fabricated his story. Furthermore, the fact that Defendants ultimately hired an African–American for the position tends to undercut the credibility of Kern's account.[6] For the reasons stated above, however, this suit is unfortunately not the proper vehicle to decide this factual dispute.

As a side note, the Court also adds that it is deeply disturbed that Plaintiff would surreptitiously record his telephone conversations with Kern. This behavior strikes the Court as one, not of a victim, but of a perpetrator. Also troubling are Plaintiff's own statements during the conversations, such as "basically I have the support or the financial backing to take it all the way to the Supreme Court." *Plaintiff's Resp. to Defs.' Mot.Summ.J., Exhibit 1, Transcript of Conversation with William Kern, at 9.* This seems to have been a lawsuit waiting for a place to strike. This Court should not be viewed as a vehicle for harassing litigation.

## IV. PLAINTIFF'S STATE LAW CLAIMS

Plaintiff also brings state law claims for fraud, intentional infliction of emotional distress, and conspiracy to violate Plaintiff's constitutional right to contract.

█ To prevail on the fraud claim, Plaintiff must offer evidence that: (1) a material misrepresentation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the representation was made with the intention that it be acted upon by the other party, (5) the party acted in reliance upon the representation, and (6) the party suffered injury. *Johnson & Higgins of Texas v. Kenneco Energy,* 962 S.W.2d 507, 524 (Tex.1998). Plaintiff alleges that the Defendants committed fraud when Captain Michael T. Godinich assured Plaintiff that he would be considered for the position if he flew to Texas to interview. Plaintiff claims that Captain Godinich knew at the time that his statement was false, and that Plaintiff wasted money flying to Texas for the interview.

█ Defendants respond that Captain Godinich only promised that Plaintiff would be interviewed, and that Plaintiff was indeed interviewed. This argument is disingenuous. Plaintiff claims that he was assured, not only that he would be interviewed, but that he would be genuinely

---

**5.** Kern said "You know I can't say who but there won't be any [African–Americans], you know, in. I've heard some of them say they'll hire another girl before they hire black." *Plaintiff's Resp. to Defs.' Mot. Summ.J., Exhibit 1, Transcript of Conversation with William Kern, at 3.*

**6.** Kern stated that the Defendants hired an African–American solely to thwart Plaintiff in

any attempt at legal redress, or put another way, hired an African–American to enable them to discriminate against an African–American. *Plaintiff's Resp. to Defs.' Mot. Summ.J., Exhibit 1, Transcript of Conversation with William Kern, at 6–7.* That Defendants would engage in this illogical, self-defeating stratagem is difficult, though not impossible, to believe.

considered. Plaintiff alleges that at the time of his statement, Captain Godinich had already ruled Plaintiff out. Whether or not this is true, Plaintiff nevertheless cannot prevail on the fraud claim because he did not suffer injury. As stated above, Plaintiff could not have been hired in any case. Thus, even assuming that the representations made to Plaintiff were false, he is in no different position than he would have been in if the representation were true and Defendants were willing to seriously consider him. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's fraud claim.

■■■ Similarly, Plaintiff cannot prevail on his claim for intentional infliction of emotional distress. Plaintiff's burden on the claim is to show that: (1) Defendants acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Whether conduct is sufficiently outrageous is a question of law for the Court to decide. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999); *Washington v. Naylor Indus. Serv. Inc.*, 893 S.W.2d 309, 313 (Tex.App.— Houston [1st Dist.] 1995, no writ). Extreme and outrageous conduct is rarely found by Texas courts. Some evidence of a physical attack or threatening behavior is usually required. *See Humphreys v. Medical Towers, Ltd.*, 893 F.Supp. 672, 681 (S.D.Tex.1995) (suggesting that the Plaintiff may have stated a claim involving the Defendant throwing a paper weight in connection with making insulting comments). Even evidence of racial animus is not by itself be sufficient. *Thomas v. Clayton*

*Williams Energy, Inc.*, 2 S.W.3d 734, 741 (Tex.App.—Houston [14th Dist.] 1999, no writ). In this case, Plaintiff interviewed with Defendants and does not complain of any mistreatment during the interview. If any racial animus existed, Plaintiff was not a witness to it. Plaintiff's Complaint suggests that Defendants' decision to choose an African–American, allegedly to thwart Plaintiff's attempt at legal redress, is the outrageous conduct.[7] Given that the basis of Plaintiff's case is racial discrimination, it is absurd for Plaintiff to suggest that Defendants' hiring of an African–American should be considered outrageous conduct. Furthermore, Plaintiff has offered no evidence that he has suffered any severe emotional distress. For these reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for intentional infliction of emotional distress.

■■■ Finally, Plaintiff's claim for conspiracy to violate his constitutional right to contract must be dismissed. The claim appears to be simply a restatement of his § 1981 claim, dismissed in the previous section. An element of a claim for civil conspiracy is that one or more unlawful, overt acts take place. *Thomas v. Collins*, 960 S.W.2d 106, 113 (Tex.App.—Houston [1st Dist.1997] writ denied). As stated in the previous section, there is no evidence that Defendants engaged in any unlawful act with regard to the Plaintiff. Thus, Defendants' Motion for Summary Judgment is **GRANTED** as to this claim.

### V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's claims are **DIS-**

---

7. The only mention of emotional distress in the Complaint comes in the sentence: "Pursuant to their conspiracy, to retaliate Defendants ... voted in an African–American ap-

plicant solely to thwart Plaintiff's E.E.O.C. complaint and inflict emotional distress upon him." *Original Complaint of Darwin Peguese, at ¶ 51.*

MISSED WITH PREJUDICE. Plaintiff's Motion for Class Certification is therefore **DENIED** as moot. Each party is to bear its own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**